UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Cristofer A. Ortega-Varela</u>

    v.                                    Case No. 1:25-cv-483-PB-TSM
                                           Opinion No. 2026 DNH 020

<u>Chris Brackett, Superintendent,
Strafford County Department of
Corrections, et al.</u>

## MEMORANDUM AND ORDER

Before the Court is petitioner Cristofer A. Ortega-Varela's motion for a temporary restraining order ("TRO") enjoining his imminent removal from the United States. <u>See</u> Doc. 13. Because I lack jurisdiction to issue such relief, I deny Ortega-Varela's motion.

## I. BACKGROUND

Ortega-Varela, a citizen of Honduras, was detained by federal immigration officials in New Hampshire on July 16, 2025. Doc. 1 at 7. Since then, he has remained in federal custody at Strafford County Department of Corrections in Dover, New Hampshire. <u>See</u> id. at 3. Ortega-Varela is subject to a final order of removal issued by an immigration judge ("IJ") at Newark Immigration Court in 2019 and affirmed by the Board of Immigration Appeals in 2024. Doc. 1-2; Doc. 1-3. Ortega-Varela is also classified as a Special Immigrant-Juvenile ("SIJ") under 8 C.F.R. § 204.11, a status he

obtained on June 12, 2025. Doc. 1-4. Ortega-Varela moved to reopen his removal proceedings after achieving SIJ status but was denied. Doc. 1-8. His appeal from that denial is pending in the Third Circuit. See Doc. 1 at 8.

Ortega-Varela filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court on November 26, 2025. Id. at 4. In that petition, Ortega-Varela asked the Court to grant his immediate release from federal custody in New Hampshire and enjoin his removal from the United States until he is afforded an opportunity to apply for adjustment of status based on his SIJ status. Id. at 19-20.

While briefing on the merits of his petition was underway, the Third Circuit lifted its administrative stay on Ortega-Varela's removal, leading him to seek the same from this Court on an emergency basis on February 13, 2026. Doc. 13; see Doc. 1-9; Doc. 13-4. At a status conference held that day, with the government's assurances that it would not remove Ortega-Varela without seventy-two hours' notice as required by the Court's service order, see Doc. 2 at 3, the parties agreed to a briefing schedule on the newly-filed motion. On March 5, the government notified the Court of its intent to remove Ortega-Varela "at a future time no less than 72 hours from the time of filing." Doc. 15. The government subsequently agreed to delay any removal action until March 10 so that the Court could resolve the pending motion after briefing was completed on March 6.

## II. STANDARD OF REVIEW

Whether construed as a motion for a TRO or for a preliminary injunction, the same four factors determine whether a court should act to preserve the status quo in advance of a dispositive ruling. Liu v. Noem, 777 F. Supp. 3d 83, 85-86 (D.N.H. 2025). I must consider (1) "the movant's likelihood of success on the merits;" (2) "whether and to what extent the movant will suffer irreparable harm in the absence of preliminary injunctive relief;" (3) "the balance of relative hardships, that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues;" and (4) "the effect, if any, that either a preliminary injunction or the absence of one will have on the public interest." Ryan v. U.S. Immigr. & Customs Enf't, 974 F.3d 9, 18 (1st Cir. 2020); see also Osorio-Martinez v. Att'y Gen., 893 F.3d 153, 178-79 (3d Cir. 2018). The first factor weighs "most heavily" in this analysis—so much so that a failure to demonstrate likelihood of success is usually fatal. See Ryan, 974 F.3d at 18.

## III. ANALYSIS

In his motion for temporary relief, Ortega-Varela previews several constitutional arguments against his removal. But to reach those arguments, I must have jurisdiction to issue the relief he seeks. The government contends that I do not. I must therefore begin by assessing the parties' jurisdictional contentions.

3

The government invokes 8 U.S.C. § 1252(a)(5), maintaining that I lack jurisdiction to grant Ortega-Varela's requested relief because doing so necessarily requires "reviewing the merits of his removal order." Doc. 14 at 3. In relevant part, that subsection reads, "[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5). The First Circuit has interpreted this provision to strip district courts of jurisdiction "to entertain a habeas challenge to the legality . . . of" a final order of removal. Ireland v. Garland, 2022 WL 4289617, at *1 (1st Cir. May 13, 2022); see also Ishak v. Gonzales, 422 F.3d 22, 29 (1st Cir. 2005) ("The plain language of" provisions including subsection 1252(a)(5), "in effect, strips the district court of habeas jurisdiction over final orders of removal . . . .").

Ortega-Varela responds that subsection 1252(a)(5) does not apply because he is "not attacking the merits or validity of his removal order" through his habeas petition. Doc. 16 at 8. Instead, he contends that he only "seeks to preserve his rights as an SIJ recipient and to prevent ICE from unlawfully stripping him of SIJ status." Id.

Stated differently, I understand Ortega-Varela to argue that his TRO request is not affected by subsection 1252(a)(5) because he does not challenge his removal order directly but instead merely contends that the government

4

lacks the power to enforce the order, as doing so would deprive him of his SIJ status in violation of his constitutional rights.[1] This argument fails to persuade because his TRO request is plainly a challenge to his removal order. See 8 U.S.C. § 1252(a)(5). While neither party has cited a case applying subsection 1252(a)(5) in this precise context, courts have regularly acknowledged that a request for a stay of a removal order based on the order's asserted inoperability, even when purportedly arising from rights independent of the removal process, falls under subsection 1252(a)(5). See United States v. Morillo, 2025 DNH 075, 2025 WL 170770, at *1-3 (D.N.H. June 18, 2025) (holding that a district court lacks jurisdiction to stay removal even where a writ of coram nobis would, if granted, hold unconstitutional a criminal conviction triggering the petitioner's removal); see also Imran v. Harper, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (affirming denial of TRO request pursuant to subsection 1252(a)(5) because "[a] request for stay of removal is a challenge to a removal order"); Amores v. Dir., Newark N.J. Field Off., Immigr. & Customs Enf., 2024 WL 2044033, at *1-2 (3d Cir.

---

[1] In this way, Ortega-Varela does not challenge a discretionary "decision or action" by the government to "execute" his removal order, which "no court" would have jurisdiction to review. See 8 U.S.C. § 1252(g); see also Kong v. United States, 62 F.4th 608, 617-18 (1st Cir. 2023) (distinguishing a challenge to the government's "discretionary decision" to carry out an action listed in subsection 1252(g) from a challenge to its "very authority" to do so (quoting Garcia v. Att'y Gen., 553 F.3d 724, 729 (3d Cir. 2009)).

May 8, 2024) (concluding that subsection 1252(a)(5) stripped district court's jurisdiction to vacate removal order premised on "unlawfully obtained conviction"); De Gonzalez v. Holder, 2012 WL 3610958, at *1 (D. Mass. Aug. 20, 2012) (finding a lack of jurisdiction to review emergency motion for stay of removal "arguing that the removal order is invalid based upon ineffective assistance of counsel"); Al-Garidi v. Holder, 2009 WL 1439216, at *1 (W.D.N.Y. May 15, 2009) ("This Court and other district courts throughout the country have routinely held that because district courts have no jurisdiction to review final orders of removal, they have no jurisdiction to review requests for stays of removal.").

Persuaded by that weight of authority, I conclude that this Court lacks jurisdiction to entertain Ortega-Varela's motion, which subsection 1252(a)(5) instead channels to the Third Circuit.[2] See 8 U.S.C. § 1252(a)(5), (b)(2) (channeling judicial review of removal orders to "the judicial circuit in which the immigration judge completed the proceedings"). Ortega-Varela remains free to address his "constitutional claims" and "questions of law" targeting his removal order to the Third Circuit. See id. § 1252(a)(2)(D). Indeed, Ortega-

---

[2] To the extent that Ortega-Varela argues that this conclusion runs afoul of the Suspension Clause by leaving him without a forum to assert that his removal is unconstitutional, see U.S. Const. art 1, § 9, cl.2, his argument is foreclosed by precedent. See Enwonwu v. Gonzales, 438 F.3d 22, 33 (1st Cir. 2006).

6

Varela has already alluded to some of these issues in his briefing on his motion for a stay of removal there. See Pet'r's Mot. for a Stay of Removal, Ortega-Varela v. Bondi, No. 25-3098 (3d Cir. 2025), ECF No. 8.

In any event, because I conclude that this Court lacks jurisdiction to grant the relief Ortega-Varela seeks, he is unable to show a likelihood of success on the merits of his petition insofar as he asks this Court to enjoin his removal. As the remaining three factors for temporary relief cannot rescue his request absent a likelihood of success, see Ryan, 974 F.3d at 18, I need not address them.

## IV. CONCLUSION

For the foregoing reasons, I deny Ortega-Varela's motion for a temporary restraining order. Doc. 13.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 9, 2026

cc:   Counsel of Record